THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN G. M. HILTON, Respondent, *v.* RICHARD J. LEWIS, as Commissioner of Assessments, and Others, Appellants.

(Premises 41 North Pearl Street — Assessment of 1937.)

Third Department, March 15, 1939.

*Joseph J. Casey, Corporation Counsel [John E. Wisely, Assistant Corporation Counsel,* of counsel], for the appellants.

*Woollard & Morris [Ernest B. Morris* of counsel; *William E. Woollard* with him on the brief], for the respondent.

BLISS, J. The order and judgment here appealed from reduced the 1937 assessment on respondent's real property in the city of Albany from $800,000 to $400,000.

The 1936 assessment on this same property was before our court and the Court of Appeals. (*People ex rel. Hilton* v. *Fahrenkopf*, 254 App. Div. 397; revd., 279 N. Y. 49.) The latter court in that case reversed a determination by our court and held that the Special Term's $800,000 finding of value was more in accord with the weight of the evidence than the finding by our court that the full value was $556,050. As was there stated by the Court of Appeals, the value of property for taxation as adjudicated in one year may be evidence of its assessable value for a succeeding year. Consequently the finding of value by the Court of Appeals for the year 1936 is entitled to great weight and may not be disregarded. The evidence that the premises in question were on July 1, 1937 leased for an annual rental of $45,000 net to the owners which was to be increased to $48,000 per year net on August 1, 1937, is also entitled to great weight.

The referee and the Special Term erred in failing to give any weight to the testimony of sales of real property made by banks in the city of Albany during the year in question. Section 293 of the Tax Law states that " evidence as to actual sales of real property within the tax district that occurred during the year in which the assessment under review was made may be given by either party." The statute makes no distinction between bank sales and other sales. It makes all actual sales some evidence of value. The referee erroneously stated that selling price alone of real property sold by banks could not be considered as establishing the market value of these parcels. The selling prices of these parcels which were sold by banks were some evidence of the market value of those parcels. This testimony should not have been wholly disregarded.

The finding of value in the instant case is so wholly at variance with the value fixed for the previous year by the Special Term and affirmed by the Court of Appeals and so inconsistent with the annual net rental return from the property that the order and judgment must be reversed and the issues determined anew.

The order and judgment appealed from should be reversed.

McNamee and Heffernan, JJ., concur; McNamee, J., in a separate opinion; Hill, P. J., dissents, with an opinion, in which Rhodes, J., concurs.

McNamee, J. (concurring). It does not seem that the assessed value of $400,000 placed on the investment property in question by the Special Term is justified in any aspect of the case before us. The property is located in the choicest business section in Albany, and is used for the conduct of a long-established, and one of the largest and most widely known department stores in upper New York State.

While all the credible evidence supports the assessment as originally made by the board, this is especially true of the actual leases now in force. The annual rent assured thereby to the owner for ten years to come is $48,000, and that too, with the obligation resting on the tenant to make substantially all repairs during that time. A yearly income, substantially net, of $48,000 capitalized at six per cent, indicates a market value of $800,000; capitalized at five per cent, it indicates a market value of $960,000; and at four per cent, $1,200,000. The payment of the rent and other performance of the lease may be fairly regarded secure, as much so as the best business probability. The reduction of the assessment from $800,000 to $400,000 would indicate a net return on the investment of more than twelve per cent. To put the case with exceeding mildness, argument to justify such reduction, for tax purposes, is, in its nature, extraordinary and most unconvincing. It is extravagant, and the resulting income unreasonable.

Again attention is called to the method of determining the *rate of assessments* generally in Albany. Parcels were selected by both parties for consideration by the Special Term, as representative of all the taxable property in the city. The rate of assessment was arrived at by dividing the sum of the values of the selected parcels by the sum of the proved values thereof. I regard this method, and the result obtained thereby, erroneous as a matter of arithmetical principle, and, therefore, of law. The corresponding error was pointed out in the dissenting opinions in at least two other recent cases in this court (*People ex rel. Hagy* v. *Lewis*, 255 App. Div. 916; *People ex rel. Woollard* v. *Lewis*, 256 id. 872). As a result of the same method followed in the *Woollard* case in 1937, the rate of assessment generally in Albany was found to be seventy-one and four-tenths per cent of value, and in the *Hagy* case in 1937, sixty-four per cent. In a large number of appeals from judgments in certiorari proceedings for the review of similar cases heard by

this court over a period of years, it was stipulated by the parties that the rate of assessment generally in Albany was eighty-eight per cent. In the present case the rate is found, by following the questionable method, at sixty-four per cent. These evident inconsistencies in themselves strongly suggest the application of a wrong principle.

The parcels of property of a tax district are not assessed on the basis of lump sum value, nor are the parcels assessed in batches; and a comparison of such aggregate assessments and values has nothing to do directly with the *average rate of assessment*. Each parcel is originally assessed as a unit, and to determine the average percentage, or average rate, which the assessments bear to the true value of the properties to be taxed, it is necessary to base the computations on the percentages, or rates, of assessments of the separate parcels; they cannot be determined on the aggregate values and assessments in Albany, nor on any group of such aggregate values and assessments. The assessments were not made that way by the assessors, in block. The various market and assessed values are necessarily different, in most cases; but the percentages, if correct, remain constant, as the tax rate itself remains constant. Accordingly, if the method pursued in this case is to be followed, of dividing aggregate assessed values by aggregate values as found, widely variant " rates " will result, depending on the fact whether parcels of large or small values (extremes) are used as a basis of computation — as they may be presented by relator on the one side, or the city on the other.

The arithmetic advocated here is clarified by reference to an illustrative table made by Mr. Justice FOSTER at the Albany Special Term on August 5, 1938, in two comparable cases (*People ex rel. Ludlum* and *People ex rel. Flemming* v. *Lewis*, not reported), in which it is assumed that there are only six parcels of real estate in Albany, and that they are of small value.

### TABLE OF SELECTED PARCELS

| Assessed value | Relator Market value | Rate % | Assessed value | City Market value | Rate % |
|---|---|---|---|---|---|
| $5 | $10 | 50 | $40 | $100 | 40 |
| $10 | $20 | 50 | $60 | $150 | 40 |
| $20 | $40 | 50 | $80 | $200 | 40 |
| $35 | $70 | 150% | $180 | $450 | 120% |

150% + 120% ÷ 6 = 45%, the average rate of assessment.
35 + 180 ÷ 70 + 450 = 41 9/26%, the relation of lump sum assessments to lump sum values.

By adding the separate percentages, and dividing by the number of parcels, the *average rate* of forty-five per cent results. It is the *average rate* which is sought. But that is not true when the sum of assessed values is divided by the sum of the found values; as the " rate " of forty-one and nine-twenty-sixths per cent results, giving only the relation of lump sum values, but not an average on *assessment percentages*. By increasing the market and assessment values on one side or the other of the table, the percentage relation of those values will become higher or lower, even though the average rate percentage of the separate parcels remains constant.

A more extravagant demonstration of the error may be made to appear:

| Property value | Assess- ment | Assess rate | Property value | Assess- ment | Assess rate |
|---|---|---|---|---|---|
| $2,000 | $1,000 | 50% | $100,000 | $10,000 | 10% |

$50\% + 10\% \div 2 = 30\%$, the average of percentages.
$10,000 + 1,000 \div 2,000 + 100,000 = 10.78\%$, the relation of lump sum values. Here is shown a difference in result of nearly twenty per cent.

The law intends that the *rate* of assessment to market value of each parcel shall be the *rate* at which every other parcel shall be assessed. The market values of properties will differ widely in many instances, and so will assessments; but the rate at which the separate properties are to be assessed must not differ; that must remain the same as to all parcels. We are not concerned with the mere values of properties, nor with the mere amounts of assessments; but the *desideratum* is that the rate at which one owner's property is assessed shall be the same rate as that at which the property of every other owner is assessed. That must be determined by dealing with the various rates shown by the record, and the resultant average. There must be and there can be properly only one average rate. That must be found by adding the *rates of assessment* as to all of the selected parcels, and dividing that sum by the number of parcels.

The judgment should be reversed and a new trial granted before another referee to be appointed by this court, with costs.

HILL, P. J. (dissenting). The city of Albany appeals from an order and judgment in a tax certiorari proceeding which reviewed and reduced the 1937 assessment upon the Hilton property located at 41 North Pearl street from $800,000, as assessed by the city authorities, to $400,000. The assessments upon this property and attendant reviews by the courts are a continuing story, and although in connection with the 1936 assessment (*People ex rel.*

*Hilton* v. *Fahrenkopf*, 279 N. Y. 49) the Court of Appeals has disapproved of the rules as to the application of *res judicata* to tax reviews, commonly supposed to have been made in *People ex rel. Warren* v. *Carter* (119 N. Y. 557) and *People ex rel. Eckerson* v. *Zundel* (157 id. 513), yet as a matter of historical juristic interest we may be permitted to recall the assessments of earlier years, even if we may not give weight thereto.

Upon the trials for assessments made in the years 1934, 1935 and 1936, the parties stipulated that property generally in Albany was assessed at eighty-eight per cent of the full value, or in the language of these cases there was twelve per cent inequality. There was no stipulation as to inequality in this case. The assessment for each of the four years was $800,000, which was reduced each year. In 1934 the full value was found by the trial court to be $558,000, and this was reduced by the stipulated amount of twelve per cent for inequality to $491,040, assessable value. In 1935 the full value was found by the trial court to be $556,050 and was reduced by the stipulated amount of twelve per cent for inequality to $489,324, assessable value. In 1936 the full value was found by the trial court to be $800,000, and this was reduced by the stipulated amount of twelve per cent for inequality to $704,000. The Appellate Division reversed the finding of the trial court as to full value, and made a new finding that the full value was $556,050, which was reduced by the stipulated twelve per cent for inequality to $489,324. (254 App. Div. 397.) The new finding as to full value was reversed by the Court of Appeals and the finding made by the Special Term reinstated. (279 N. Y. 49, 53.) The judgment and order under review fixed the full value at $560,000 and reduced that amount by twenty-eight per cent plus for inequality to $400,000. On the question of overvaluation, five witnesses were sworn by the relator and three by the city. The referee fixed a value between the two extremes and the Special Term approved the finding. This was in accord with the weight of the evidence. The referee found that property generally in the city of Albany was assessed at sixty-four per cent of full value, and thus that there was thirty-six per cent inequality. The relator had demanded reduction only to $400,000; the trial court was not permitted to find a lower assessed value. (*Matter of Wright* v. *Comr. of Assessment & Taxation*, 242 App. Div. 886.) Thus, as earlier stated, the full value was reduced twenty-eight per cent plus for inequality. This was in accord with the weight of the evidence.

The judgment should be affirmed, with fifty dollars costs and disbursements.

RHODES, J., concurs.

Judgment and order reversed, on the law and facts, with costs to the appellants to abide the event.  The court reverses all findings of fact and disapproves all conclusions of law made by the court below.  The matter is referred to Hon. Aaron V. S. Cochrane, official referee, to hear the evidence and to report thereon, with his conclusions, to this court.